# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

U.S. District Court
Wisconsin Eastern

JUL 06 2026

FILED
Clerk of Court

Shondell Killebrew,
PLAINTIFF,

VS.                                    Case No.

Heather Riehle Vogel,
Marqueleana Mcmurtry et al.
DEFENDANTS.                        **26-C-1180**

## 42 U.S.C §1983
## CIVIL COMPLAINT

A. Parties

1. Shondell Killebrew, is a citizen of the United States of America and currently resides at 4131a N 41st St in Milwaukee, Wisconsin 53216, and was subjected to the deliberate violation of my fifth and fourteenth amendments etc. when the defendants herein pursued a revocation hearing for allegations without conducting a thorough investigation.

2. Heather Riehle Vogel, a defendant herein this 1983 federal civil complaint is currently a correction field supervisor for the Wisconsin Department of Community Corrections (hereinafter D.C.C) (unit 333) located at 4041 N. Richards St. in Milwaukee, Wisconsin 53212, and acted under the color of state law at the relevant time she deprived the plaintiff his rights.

3. Marqueleana Mcmurtry, a defendant herein this 1983 federal civil complaint was my probation and parole field agent for the Wisconsin Department of Community Corrections (unit 333) located at 4160 N. Port Washington Rd. in Glendale Wisconsin 53212 (before my re-incarceration and when she resigned), and acted under the color of state law at the relevant time she deprived the plaintiff of his rights.

B. Legal Claim

Plaintiff have refiled this federal civil rights complaint after it has been dismissed without prejudice for lacking specific facts and is before the Wisconsin six years statute of limitation deadline from the date my rights were violated (approximately February 2023) seeking relief from the Department of Community Corrections on behalf of the defendants herein who were/is employees of the Wisconsin government and therefore acted under the color of state law when the defendants herein colluded and of one's own volition  made a conscious decision to pursue revoking the plaintiff's parole after they opt not to conduct a thorough investigation which deprived the plaintiff of his due process right, equal protection right, etc.

Plaintiff also pursues a Brady law violation because defendants did not proactively disclose favorable exculpatory evidence that would have benefited the plaintiff and exonerated him of the alleged violations and would have undermined the credibility of the alleged victim. Brady v. Maryland, 373 U.S. 83 (1963).

C. Statement of Claim

On October 17th,2022,  (the day after an altercation occurred with my ex) I had informed my sister Lashea Killebrew (who was present

at the time of the altercation (October 17th, 2022) and was a credible witness) that I was going to report the incident to my P.O. (while being accompanied by another credible witness Christina Henderson, who was present both days of each altercation) and asking her to meet me at the office in which she agreed. Upon arriving at the office, I was immediately placed in custody. While in custody, defendant Mcmurtry acquired a statement from me, (Refer to Exhibit A. my statement and the alleged victim and her nephew statements) in which I denied the severe alleged violations. Per the D.C.C's Evidence Based Response to Violations (hereinafter E.B.R.V) policy and procedure that states "When an agent discovers evidence of possible violations of supervision by an offender, the agent must investigate the facts underlying the alleged violations. If evidence supports that a violation of supervision has occurred, the agent must consider the offender's overall risk to re-offend (based upon the most recent COMPAS Risk Assessment score), the severity level of the most significant violation and any other relevant factors (prior violations, stability factors, positive behaviors, aggravating/mitigating factors, etc.), in order to determine an appropriate response." (Refer to Exhibit B. E.B.R.V investigation procedures). Now because the nature of the alleged violations were serious and categorized under being re-incarcerated up to 30% of my time available to 60% of my time available, (Refer to Exhibit C. Penalty Schedule of D.C.C Supervision-Revocation Policy) Defendant Mcmurtry opted to pursue the most severe alleged violations against me. And because of the unconstitutional hearsay policy that states,"hearsay is defined as a statement, which is offered as proof of the truth of the matter asserted but the statement maker is not available for question or cross-examination," she knew she did not have to conduct a thorough investigation. However, the hearsay policy also states,"Although rules of evidence may be relaxed somewhat at a revocation hearing, they cannot be relaxed to the

point where a violation may be proven entirely by unsubstantiated hearsay testimony." (Refer to Exhibit D .01 Hearsay Policy) Defendant Mcmurtry did exactly that by pursuing a revocation hearing with only the alleged victim's statement (Refer to Exhibit E Violation Summary). As you can see, per the Violation Summary, Violation and risk level of the alleged violations are classified as very high. Also, you can see under Evidence, the Defendants only relied on unsubstantiated statements of the alleged victim. (Refer back to Exhibit E). Rejection of "He-Said/She-Said": The response implies that the personal assertions or unverified allegations are insufficient. The Substantial Evidence Rule states," Revocation cannot be based solely on uncorroborated or unreliable hearsay. The D.O.C must support allegations with a preponderance of reliable evidence." (Refer to Exhibit F Substantial Evidence Rule) Violation allegations prompt an investigation to determine if there is evidence to support that the alleged behavior occurred. This can include victim and witness statements, police reports, physical evidence, client statement, etc. Once a violation is substantiated, the Evidence Based Response to Violations decision making process is utilized to determine the appropriate response, which could be revocation if other intervention and accountability responses are not appropriate.

On October 16th, 2022, I had called for the assistance of a law enforcement officer to respond to my home where my ex had shown up and was acting irate because I broke up with her. (Refer to Exhibit G 911 C.A.D Report, where caller states ex-girlfriend will not leave from in front of his home, and she is outside with her nephew causing trouble trying to fight. Victim then states he is not trying to fight the suspect and her nephew), however a law enforcement officer never responded. On October 17, 2022, Plaintiff again calls for the assistance of law enforcement officers to respond to my home due to suspect daughter called and stated (while I was

en route to my P.O. office) that they were at my home breaking out my windows. Further reviewing of the C.A.D report, it came to my attention that my ex-girlfriend's daughter had called 911 but made no statement of me causing her bodily harm or brandishing a firearm. When the law enforcement officer reported, I asked him to go talk to my ex-girlfriend and to remove her from in front of my house. According to Probation and Parole rules, if she had made a statement to the law enforcement officer of me brandishing a firearm and/or causing her bodily harm, I would have been placed in custody immediately. (Refer to Exhibit H Pending Charges/Convictions Where it states I was not arrested, I was not issued a ticket, I was not charged and where there is no pending charges). Once I taken into custody on 10/17/22 (by the Defendant), on approximately 11/03/2022, a search of my home, located at 3306 W Wells St Unit 6 in Milwaukee WI, was conducted by the Defendant and several other Parole agents (Refer to Exhibit I, Search report created by the defendant Mcmurtry) resulting in no firearm, weapon or ammunition was found. When I questioned defendant Mcmurtry about obtaining a statements from my sister Lashea Killebrew and Christina Henderson, who is a credible witnesses, she stated (in regard to my sister) that she didn't know how to get in contact with my sister and have no idea of how to contact my friend . I know this to be untrue because she called my sister on numerous different occasions to check up on me while on supervison. She also could have acquired a statement from my sister when my sister came to pick up my belongings after I was arrested for this incident. (Refer to Exhibit J, Statements of Items Seized and Documented reports of Defendants contacting plaintiff sister). While I was in custody, Defendant Mcmurtry had listened to the recordings of my phone calls to credible witness, Christina Henderson, for approximately 30 days (Refer to Exhibit K, documented report created by defendant Mcmurtry of listensining to recorded jail calls) and never heard me

state anything about causing my ex bodily harm or brandishing a gun, whereas defendant Mcmurtry could have acquired Christina Henderson's phone number from me or the computers. As a matter of fact, credible witness, Christina Henderson, repeatedly stated in those phone calls, that I did nothing wrong, and that "I stopped her from beating my ex's ass,"which resulted in a Brady Rule violation. The Brady Rule requires prosecutors to proactively disclose any "favorable" evidence that could exonerate the defendant. Impeaching evidence undermines the credibility of a prosecution witness. Now because the Plaintiff was subject to injustice and consciously knowing that his due process rights were being violated because the Defendants opted not to acquire evidence caused him to become afraid of facing the Administrative Law Judge and compelled the Plaintiff to waive his hearing.

Although the E.B.R.V. directs agents to do an objective investigation rather than an immediate revocation and to objectively weigh all evidence before determining an intervention, the defendants made a conscious decision on November 7th,2022 (Refer to Exhibit L, letter address to plaintiff of defendants pursuing revocation proceedings) to initiate revocation proceedings on unsubstantiated evidence (Refer back to Exhibit E, only evidence, the statement of alleged victim) and a fabricated statement made by the defendants that the plaintiff possessed a firearm as a convicted felon (Refer to Exhibit M, Plotkin) which is unsubstantiated, the defendants deliberately upheld these allegations solely because of the severity of the violations therefore violating my equal protection right, and due process right, because it lead to a revocation hearing and disregarded the key rights I retain under the United States constitution of presenting exculpatory evidence (ie. credible witnesses statements/documents) because the defendants opted not to conduct a thorough investigation that was a negligent act/omission of the legal duty owed to the plaintiff and thus directly causing the plaintiff's injury, and that the

plaintiff suffered actual damages as a result. These actions displayed by the defendants were deliberate and premeditated for the reason that when they made conscious decisions to initiate a revocation hearing after opting not to conduct a thorough investigation, rely on unsubstantiated evidence and to disregard the exculpatory evidence of the minor investigation that they did conduct constitutes clear violations of my rights, and for the defendants to try to impugn this civil complaint validity, "Ponder the Consequences". This honorable courts should not see the defendants deliberate actions as a unilaterally mistake when they opt out of the E.B.R.V framework.

D. Jurisdiction

Yes I am suing for the violations of federal law under 28 U.S.C § 1331.

E.

To state a claim a complaint must contain sufficient factual matter accepted as true "that is plausible on it's face."(quoting Twombly, 550 U.S at 570), and the complaint's allegations "must be enough to raise a right to relief above speculative level." Twombly, 550 U.S. at 555, so since plaintiff clearly established constitutional violations by the defendants in a particularized sense justifies the removal of qualified immunity shield. Therefore I ask the honorable court to remedy the violation of plaintiff's constitutional rights and the rights secured to him by the U.S. law granting his request for relief as stated hereinafter:

1.Compensatory Damages, $1,500.00 for each day I spent serving involuntary servitude in regard to this incident give rise to this claim

(from October 17th, 2022 to his release in approximately February 2024).

2. Substantial Damages, $30,000.00 for plaintiff's property being stolen when his apartment was burglarized (Refer to Exhibit N, documentation of the officers who responded to my apartment being burglarized, supervision contact on 11-2-2022 in which my sister informed defendant Vogel of the burglary of my apartment and C.A.D report of sister Lashea reporting the burglary of my home) due to being re-incarcerated regarding this incident giving rise to this claim.

3. Emotion Damages, $ 170,000.00 for the agonizing mental pain I suffered, first from consciously having knowledge that all I did on the day giving rise to this claim (10/16/22 and 10/17/22) was defuse the situation, secondly missing special family events (i.e step dads funeral, mother's death anniversary, the birth of two great nephews, my niece wedding, as well as birthdays, and holidays etc.) and last to be wrongfully re-incarcerated in a environment that cause plaintiff's to harbor stress, anger, frustration, pain, depression, anxiety, and confusion.

4. Actual Damages, $ 30,000.00 equivalent to the financial loss of losing signed artist under my recording label.

5. Tort Damages, $ 60,000.00 for penalizing the defendants herein and to deter them from violating another offender's constitutional rights and/or laws established by the United States.

6. Constitutional Tort, $120,000.00 for the defendants who deliberately acted under the color of state law when they violated the plaintiff's constitutional rights.

7. Government Torts, $ 300,000.00 for the defendants who displayed prosecutorial misconduct and deliberately abuse of their authority granted to them by the United States of America.

8. Intentional Torts, $ 500,000.00 because the violations committed by the defendants was with general and specific intent.

9. Punitive Damages, $ 140,000.00 to punish the defendants for displaying intentional misconduct and gross negligence.

f. Jury Demand

Yes, I want a jury to hear my case.

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this 26 day of June ,2026.

Respectfully Submitted,